UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILL CHURCHILL, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-2458 |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Pending before this Court is Defendant's Motion for Summary Judgment. (Doc. No. 18.) After considering the motion, the responses thereto, and the applicable law, the Court finds that Defendant's Motion for Summary Judgment must be **GRANTED**.

### I.      BACKGROUND

Plaintiff Will Churchill ("Plaintiff" or "Churchill") is a 53-year-old African American. (Pl. Am. Compl., Doc. No. 11 ¶ 12.) Churchill was employed by the Texas Department of Criminal Justice ("Defendant" or "TDCJ") for nearly twenty-five years prior to his retirement on January 31, 2010. (Doc. No. 18 at p. 2.) In June 2010, several months after Churchill retired, he submitted an application for TDCJ job posting 037016R1, which was for the position of Sergeant of Correctional Officers - Correctional Training Instructor at the Ramsey I unit (referred to herein as "Training Sergeant

1

position"). (*Id.* ¶¶ 14-18.) Churchill was not hired. Instead, the position went to Vicke Mossbarger ("Mossbarger"), who is white.

The minimum qualifications listed for the Training Sergeant position were contained in the job posting and required (1) a high school education (or its equivalent) and (2) two years of correctional custody experience. Human Resources personnel screened applications for eligibility under the minimum qualifications. Both Churchill and Mossbarger met these minimum qualifications for the position. (Doc. No. 18 at p. 3.)

Once applicants were determined to meet minimum qualifications, Human Resources personnel contacted and arranged for the candidates to appear for interviews before the selection board. Both Churchill and Mossbarger were contacted for interviews. The Primary Interviewer on the selection board for the Training Sergeant position was Major Charles Siringi ("Siringi"), who is the same race as Churchill. (Doc. No. 18 at p. 4.) Siringi was assisted in the selection process by his immediate supervisor, Brian Blanchard ("Blanchard"), who was a Manager 1 in the Region 3 Director's office and served as TDCJ Assistant Director of Training. *Id.*

The selection process consisted of fifteen-minute interviews divided into two segments. The first segment was a series of questions to which candidates provided responses. In the second segment, each candidate gave a five-minute oral presentation on a subject chosen by the candidate. Candidates' oral presentations were judged and graded on fourteen separate criteria, with scores ranging from a low of 1 to a high of 5. At the conclusion of the interview process, TDCJ selected Mossbarger for the Training Sergeant position. (Doc. No. 18 at p. 5.)

Churchill alleges that TDCJ discriminated against him on the basis of his race in violation of 42 U.S.C. § 2000e, *et seq.*

## II.   LEGAL STANDARD

### A.  Summary Judgment

To grant summary judgment, the Court must find that the pleadings and evidence show that no genuine issue of material fact exists, and therefore the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact; however, the party need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1997). If the moving party meets this burden, the nonmoving party must then go beyond the pleadings to find specific facts showing there is a genuine issue for trial. *Id.* "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted).

Factual controversies should be resolved in favor of the nonmoving party. *Liquid Air Corp.*, 37 F.3d at 1075. However, "summary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Id.* at 1076 (internal quotations omitted). Importantly, "[t]he nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence." *Diaz v. Superior Energy Services, LLC*, 341 Fed.Appx. 26, 28 (5th Cir. 2009) (citation omitted). The Court should not, in the absence of proof, assume that the nonmoving party could or would provide the necessary facts. *Liquid Air Corp.*, 37 F.3d at 1075. As the

Supreme Court has noted, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.  Title VII

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee based on the individual's race. Intentional discrimination can be proven by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If the Title VII claims lack direct evidence of discrimination, they will be analyzed according to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell* framework, the plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 802. To meet this burden, the plaintiff must show 1) he is a member of a protected class, 2) he was qualified for the job, 3) he suffered an adverse employment action, and 4) others outside the protected group were treated more favorably. *Id.* If the plaintiff succeeds in making the *prima facie* case, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the treatment of the plaintiff. *Id*. If the defendant offers a nondiscriminatory reason, the burden shifts back to the plaintiff to show that the employer's reason for the disparate treatment is merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000).

### III.    ANALYSIS

#### A.  Plaintiff's *Prima Facie* Case

TDCJ does not dispute elements 1, 3 and 4 of Churchill's *prima facie* case. However, TDCJ does allege that Churchill fails to meet the second element because he provided inaccurate information in the "Employment History" section of his application. (Churchill depo., p. 99, lines 5-18.) Pursuant to TDCJ's PD-71, "Selection System Procedures," "Any applicant who provides false or inaccurate information of documentation when applying for a posted position shall be disqualified from consideration for that position." (Doc. No. 18, Ex. 3, p. 12, ¶ V.A.2.) In his application, Churchill claimed his most recent employment was as a Senior Warden I at the TDCJ Central Unit in Sugarland, Texas, where he worked from 10/01/08 until 1/31/10 with a salary of $6200/month. According to TDCJ personnel records, none of this information is true. Records reveal that Churchill's last job assignment was as an Assistant Warden at the Byrd Unit in Huntsville, Texas from 6/01/09 until 1/31/10 where his salary was $4,458.50/month. (Doc. No. 18, Ex. 2, ¶ 3.) Based on this inaccurate information, TDCJ argues that Churchill was not qualified for the job, and therefore fails to establish the second element of his *prima facie* case.

However, even if this inaccurate information would have disqualified Churchill from consideration, it constitutes after-acquired evidence. The Supreme Court has stated that if evidence of wrongdoing is discovered later, it is not a complete bar to recovery; it only affects the remedy. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 352 (1995). Though *McKennon* is an ADEA case, the Court stated that the "substantive, antidiscrimination provisions of the ADEA are modeled upon the prohibitions of Title

VII." *Id.* at 357. Therefore, the reasoning used in *McKennon* also applies in this case. After-acquired evidence is not a complete bar to recovery because the purposes of the Act are to compensate employees for injuries caused by prohibited discrimination and to deter employers from engaging in such discrimination. *See McCray v. DPC Industries, Inc.*, 875 F.Supp 384, 388 (E.D. Tex. 1995). Furthermore, the Fifth Circuit has stated that "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106, 1108 (5th Cir. 1995), *quoting McKennon* 513 U.S. at 362-63. TDCJ has not shown that Churchill would have been terminated based on the inaccurate information on his application. In fact, Churchill has stated that TDCJ did rehire him as a Correctional Officer 60 days later after the interview for the Training Sergeant position, and he has remained employed in that position. Therefore, Churchill has met all elements of the *prima facie* case.

### B.  Defendant's Legitimate, Nondiscriminatory Reason

Once plaintiff succeeds in making the *prima facie* case, the burden shifts to defendant to produce evidence of a legitimate, nondiscriminatory reason for the treatment of the plaintiff. *McDonnell*, 411 U.S. at 802. Defendant need not persuade the court that it was actually motivated by the proffered reasons. *See Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n. 2 (1978). Rather, it is sufficient if the defendant raises a genuine issue of fact as to whether it discriminated against plaintiff. To make this showing, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Texas Dept. of Community Affairs v.*

*Burdine*, 450 U.S. 248, 248 (1995). However, defendant cannot meet its burden exclusively through pleadings or by argument of counsel. *Id*.

In this case, TDCJ contends that, even assuming a *prima facie* case, Churchill cannot overcome its proffered legitimate, nondiscriminatory reason for selecting Mossbarger: that she was the better qualified individual based on the selection criteria which TDCJ has used for ten years. (Doc. No. 18 at p. 10.) TDCJ states that Mossbarger outperformed all applicants in the interview, and as a result, was offered the job. (Doc. No. 22 at p. 3.)

Churchill alleges that TDCJ did not follow its written policy in assessing a number of factors such as education, experience, and training. However, TDCJ did consider at least education and experience since anyone who failed to meet the minimum requirements listed in the job posting did not receive an interview. Additionally, the Fifth Circuit has held that "[a]n employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection." *Alvarado v. Texas Rangers*, 492 F.3d 605, 616 (5th Cir. 2007). Therefore, TDCJ had the discretion to hire Mossbarger based on a better interview performance.

Though the Fifth Circuit allows subjective reasons for personnel decisions, the defendant employer "must articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee." *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004). TDCJ has articulated these specific reasons. The goal of the interview process was to hire the most effective instructor for the Ramsey Training Academy.

(Doc. No. 18, Ex. 7 ¶¶ 6-7; Ex. 8 ¶ 8; Ex. 6 ¶ 8.) TDCJ stated that Mossbarger outperformed Churchill in both segments of the interview.

The first segment of the interview was question and answer. All candidates were asked the same series of questions. At the end of all interviews, Blanchard and Siringi agreed that "Mossbarger had exhibited the skills and aptitude which set her apart as the best candidate for the training sergeant position." Blanchard further described Mossbarger's responses as "unusually articulate and demonstrated that she is thoughtful, knowledgeable and capable of answering questions under pressure." In comparison, Blanchard said Churchill's "responses were not nearly as focused or responsive as Ms. Mossbarger's." (Doc. No. 18, Ex. 7, ¶ 11.) TDCJ illustrates these conclusions with specific responses by Mossbarger and Churchill.

The second segment of the interview consisted of a five minute oral presentation. The candidates were graded in 14 categories, including voice control, trainee participation, use of training aids, and overall presentation skills. Mossbarger scored a 68 on the oral presentation interview while Churchill scored a 64.

The above reasons are sufficient for TDCJ to meet its burden of providing a legitimate, nondiscriminatory reason for hiring Mossbarger over Churchill.

### C.  Plaintiff's Pretext for Discrimination

Once defendant offers a nondiscriminatory reason, the burden then shifts back to plaintiff to show that the employer's reason for the disparate treatment is merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000). Churchill alleges two reasons that TDCJ's nondiscriminatory reason is a mere pretext for discrimination. First, Churchill alleges that TDCJ's reasons for hiring Mossbarger are

inconsistent. Second, Churchill argues that he is a clearly better qualified candidate than Mossbarger. Neither of these reasons raises a genuine issue of fact.

Churchill notes that Siringi stated in Interrogatory No. 8 that he selected Mossbarger for her "varied experience within the agency," but did not mention this reason in his deposition or written rationale. (Doc. No. 19 ¶ 35.) Churchill argues that this is an inconsistency that is evidence of pretext, relying on *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 413-15 (5th Cir. 2007). However, Churchill does not properly invoke *Burrell.* In that case, Defendant Dr. Pepper gave two inconsistent reasons for not promoting Plaintiff Burrell. Dr. Pepper told the EEOC that it did not promote Burrell because of his purchasing experience, but told the district court that it did not promote Burrell because of his insufficient experience in the bottling industry. The Fifth Circuit found that the unexplained inconsistency was evidence from which a jury could infer that Dr. Pepper's proffered rationale was pretextual. *Id.* at 415. Siringi had not provided inconsistent reasons for hiring Mossbarger. Instead, Siringi omitted one particular rationale in his deposition that he had mentioned in Interrogatory 8. Churchill has not shown that omission of a rationale for hiring equates to an inconsistent statement. Furthermore, unlike in *Burrell,* the reasons offered by Siringi were for hiring Mossbarger, not for failing to promote Churchill. Therefore this case is distinguished from *Burrell*, and the alleged inconsistency is not enough to infer pretext for discrimination.

Second, Churchill alleges pretext because he is a clearly better qualified candidate than Mossbarger. The Fifth Circuit has stated that "[s]howing that two candidates are similarly qualified does not establish pretext under this standard." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). In order to establish pretext by showing the

losing candidate has superior qualifications, the losing candidate's qualifications must "leap from the record and cry out to all who would listen that he was vastly - or even clearly - more qualified for the subject job." *Price,* 283 F.3d at 723, *quoting Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993). Churchill provides a chart containing nine areas in which his qualifications exceed Mossbarger's. (Doc. No. 19 ¶ 40.) TDCJ then responds that the chart is incomplete and lists additional qualifications Mossbarger has, which do not appear in Churchill's chart. Her additional qualifications include 20 years of experience at TDCJ and certificates in Basic Supervisory Training, Hostage Negotiator Training, Classification Case Manager Training, Foundation Skills for Trainers, TDCJ Pre-Service and In-Service Training, HR Rep. Training, Safe Prison Program Training, Techniques for Group Instruction, Training for Trainers/PD-96, HRTS Training, PD-71 HR Training, and she was TDCJ Firearms qualified. (Doc. No. 22 at p. 4.) These qualifications greatly attenuate Churchill's argument that his qualifications "leap from the record . . .that he was vastly – or even clearly – more qualified." *Price*, 283 F.3d at 723.

In *Reeves*, the Court recognized that a *prima facie* showing, combined with evidence of pretext, may not always be enough to defeat judgment as a matter of law. The Court observed that "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred," the employer may be entitled to judgment in its favor. *Reeves*, 530 U.S. at 148. *See also Price*, 283 F.3d at 724. Churchill raises only a weak issue of fact as to his allegedly superior qualifications. Therefore, he fails to raise issues of genuine fact that discrimination has occurred. As a result, Churchill fails to meet the burden of showing that TDCJ's reason for not hiring him is a pretext for discrimination.

## IV.    CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment (Doc. No. 18) is **GRANTED.**

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this 14th day of September, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE